IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SUSAN SANDOVAL,

      Plaintiff,

vs.                                                        No. CV 07-0041 MV/WDS

MICHAEL BILLINGS, in his
individual and official capacity
as Labor Relations Officer for the
Bureau of Indian Affairs and for
the Office of the Special Trustee
for American Indians,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Temporary Restraining Order, filed January 19, 2007 [**Doc. No. 7**].[1] The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that **Plaintiff's motion is well-taken, and, accordingly, will be GRANTED.**

## BACKGROUND

Plaintiff has made a Motion for a Temporary Restraining Order ("TRO") to compel Defendant, Michael Billings, in his individual and official capacity as Labor Relations Officer for the Bureau of Indian Affairs (BIA) and for the Office of Special Trustee for American Indians (OST), to withdraw the ban of Ms. Sandoval from BIA and OST facilities so that she may have access to

---

[1] Plaintiff's motion also requests a preliminary injunction and permanent injunctive relief, which the Court does not address at this time.

BIA and OST facilities, sidewalks and parking lots to the same extent as the general public or other union representatives.

Plaintiff is a field representative for the Indian Educators Federation (IEF), AFT, AFL-CIO ("Union"). She alleges that her duties as a Union field representative require daily interaction in BIA and OST facilities. Her Union representative duties include attending onsite meetings between employees and employers for dispute resolutions, providing onsite training to union stewards, attending onsite management briefings about issues that would affect employees, and recruiting new dues paying members. In her Complaint, Plaintiff states that Defendant banned her from all BIA and OST facilities, parking lots and sidewalks subsequent to an incident on June 8, 2006, at the Santa Clara Day School, a BIA school. The parties dispute the exact events of that day.

Defendant describes the events in a letter to Patrick Carr, President of the IEF, dated June 30, 2006. *See* Letter from Michael Billings to Patrick Carr (June 30, 2006) (attached as Exhibit 1 to Complaint). In that letter, Defendant told Mr. Carr that Plaintiff and Jackie Sanchez, a Santa Clara Day School teacher whom Plaintiff represents, interrupted a private meeting between the Santa Clara Day School principal and parents. Defendant states that the purpose of the meeting was to address any concerns that the parents had about Ms. Sanchez's teaching contract not being renewed. Defendant alleged that Plaintiff refused to leave the meeting when asked to do so and refused to turn off a tape recorder that she had brought. He also alleged that Plaintiff announced to the parents that the principal had been harassing Ms. Sanchez all year. Plaintiff contends that she did not interrupt the meeting and did not refuse to leave the meeting when asked to do so.

In that same letter, Defendant also referred to an earlier incident when Plaintiff entered a management official's office without an appointment and demanded a meeting. Defendant alleges

that Plaintiff refused to make an appointment and refused to leave the office. He stated that management had to call security to escort Plaintiff out of the office.

Finally, in that same June 30, 2006, letter, Defendant concluded that "[E]ffective immediately, Ms. Sandoval is no longer permitted access to any Bureau (Indian Affairs or OST) facilities. . . . . We have taken action to ensure that Bureau security personnel terminate her access privileges. If Ms. Sandoval attempts to enter our facilities, appropriate law enforcement officials will be contacted and criminal charges may be filed." *Id.* This letter was copied to NBC Security Services; Regional Director,SW Region; Bureau HR Offices and OST Servicing HR Office. Defendant appeared to extend the ban to BIA and OST parking lots and sidewalks as well, in an e-mail dated September 20, 2006. *See* E-mail from Michael Billings (Sept. 20, 2006) (attached as Exhibit 10 to Complaint).

Essentially, Plaintiff alleges that this ban from all BIA and OST facilities makes it impossible for her to do her job. She argues that Defendant's actions violate various constitutional rights, including her rights under the First Amendment, Fourth Amendment, Equal Protection Clause and Due Process Clause. On these bases, she seeks injunctive relief.[2]

## JURISDICTION

As a preliminary matter, Defendant makes two jurisdictional arguments, which he argues would prevent Plaintiff from prevailing on the merits of her claims. These arguments are set forth as follows:

---

[2]Plaintiff has also brought a damages claim against Defendant in his individual capacity. The damages claim is not the subject of the present motion for temporary restraining order.

1.  Plaintiff Has Not Identified a Waiver of Sovereign Immunity to Pursue Her Claim Against Defendant.

The thrust of Defendant's argument is that Plaintiff is suing Defendant in his official capacity, which means that the suit is against the United States. He argues that since the United States may not be sued without its consent, absent a waiver of sovereign immunity, the district court lacks jurisdiction over Plaintiff's claim.

Defendant correctly cites the legal proposition that if the relief sought against a federal officer in fact operates against the sovereign, then the action must be deemed as one against the sovereign. *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). In other words, a suit is actually one against the United States if the request for relief would act "to restrain the Government from acting, or to compel it to act." *Larson v. Domestic & Foreign Coerce Corp.*, 337 U.S. 682, 704, (1949).

In this case, the suit is, in part, against the Defendant in his official capacity and the suit requests relief that would affect him in the exercise of his official functions. Despite this, as explained below, the relief requested by Plaintiff does not implicate the doctrine of sovereign immunity.

A district court has jurisdiction to grant injunctive relief in cases involving federal questions pursuant to 28 U.S.C. § 1331. *See Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 566 (10th Cir. 1981). The present case raises a federal question because Defendant claims violation of her rights under the Constitution of the United States. *See* 28 U.S.C. § 1331. The Tenth Circuit has held that sovereign immunity is waived in an action for injunctive relief under 28 U.S.C. § 1331. Specifically, the Tenth Circuit has found that the United States waived its immunity under 5 U.S.C. § 702, which provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act

in his official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensible party.

The Tenth Circuit has held that this waiver is a general waiver of the United States' sovereign immunity from injunctive relief and is not limited to suits under the Administrative Procedure Act. *Simmat v. Unites States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005). Therefore, a claim for injunctive relief under 28 U.S.C. § 1331 is not barred by the doctrine of sovereign immunity in this case.

On the other hand, Plaintiff's request for relief may be viewed as a request for mandamus under 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The Tenth Circuit has explicitly held that "[a]pplication of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity." *Simmat v. Unites States Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005).

Therefore, regardless of whether the present suit is construed as a request for injunctive relief, pursuant to 28 U.S.C. § 1331, or a request for mandamus relief, pursuant to 28 U.S.C. § 1361, the doctrine of sovereign immunity does not apply.

    2.    <u>This Court Does Not Have Jurisdiction in This Matter Because the Federal Labor Relation Authority Provides the Exclusive Remedy for Plaintiff's Claims</u>

Defendant argues that Plaintiff's claim is barred by the remedy provisions of the Federal Labor Relation Authority ("FLRA"), 5 U.S.C. § 7101, et seq., which Congress meant to vest with "exclusive and final authority to issue unfair labor practice complaints." *Karahalios v. National*

*Federation of Federal Employees*, Local 1263, 489 U.S. 527, 533 (1989). To determine whether the FLRA does provide the exclusive remedy, this Court first must determine whether Plaintiff's suit constitutes an unfair labor practice complaint. The FLRA defines an unfair labor practice as, among other things, an employer's interference with an employee's exercise of rights under the FLRA. 5 U.S.C. § 7116. There are other types of labor practices listed by Section 7116 that, by their terms, are not applicable to the present facts. For example, Section 7116 also lists the following types of unfair labor practices: providing unlawful assistance to another union, refusing to bargain in good faith with the recognized union, refusing to cooperate in required impasse resolution procedures, or otherwise violating the labor relations statute. 5 U.S.C. § 7116.

Defendant contends the FLRA provisions apply because Plaintiff "is an employee of a union which by definition is covered under various provisions of the statute, including the unfair practice portions of the statute." Def.'s Supplemental Br. 6. However, a review of the statute illustrates that none of the FLRA provisions provide protection for non-federal employees. Rather, the statute provides protection for the following classes: (1) agencies, *see, e.g.*, 5 U.S.C. § 7116(b)(2), (5), (7); (2) employees, *see, e.g.*, 5 U.S.C. § 7116(a)(1), (2), (4) and (b)(1-4); and/or (3) labor organizations, *see, e.g.*, 5 U.S.C. § 7116(a)(2), (3), (5). By statutory definition, Plaintiff does not fall into any of these categories. Clearly Plaintiff is not an agency. Nor is she an employee, which is primarily defined by the FLRA as "an individual employed in an agency." 5 U.S.C. § 7103(a)(2).[3] Nor is she

---

[3]The statutory definition of employee also includes an individual "whose employment in an agency has ceased because of any unfair labor practice under section 7116 of this title and who has not obtained any other regular and substantially equivalent employment, as determined under regulations prescribed by the Federal Labor Relations Authority." 5 U.S.C. § 7103(a)(2)(B). The definition of employee also specifically excludes several classes of individuals, none of which are relevant to this case. *See* 5 U.S.C. § 7103(a)(2)(B)(i-v).

a labor organization. A labor organization is defined as "an organization composed in whole or in part of employees, in which employees participate and pay dues, and which has as a purpose the dealing with an agency concerning grievances and conditions of employment." *See* 5 U.S.C. § 7103(a)(4). A plain reading of the definition of "labor organization" makes clear that Congress did not intend for this term to refer to an individual since a labor organization must be "composed in whole or in part of employees" - in other words - by definition, a labor organization is composed of more than one person. *See id*. The Court's finding that none of the above provisions provide a remedy for a violation of a non-federal employees rights is consistent with the stated purpose of the FLRA, which is "to prescribe certain *rights and obligations of the employees* of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. 7101(b). *See also*, *Miller v. U.S. Dep't. of Agric. Farm Servs. Agency,* 143 F.3d 1413 (11th Cir. 1998) (Eleventh Circuit concluded that the Civil Service Reform Act ("CSRA") (which encompasses the FLRA) does not provide protections for workers who are not federal employees).[4]

---

[4] Unfortunately, beyond stating this conclusion, the *Miller* case is not particularly instructive to our case. The conclusion that the CSRA does not provide protection for non-federal employees was not the holding in *Miller*, rather it was merely the starting point of an analysis to determine what remedy the plaintiff did have. The plaintiff in *Miller* was a county staffer in the United States Department of Agriculture's Agricultural Stabilization and Conservation Service (ASCS). Ultimately, the Eleventh Circuit concluded that, as a county staffer for the ASCS, the plaintiff had a remedy under the Administrative Procedures Act. *Id*. at 1416. The Defendant in the present case tries to distinguish the *Miller* conclusion about application of the CSRA by stating that *Miller* is not "analogous to the matter before [] this Court since **Plaintiff is an employee of a union, which, by definition, is covered under various provisions of the statute**, including the unfair practice portions of the Statute." Def's Supplemental Br. 6 (emphasis added). Defendant is incorrect. As already discussed, Plaintiff is not, by definition, covered under the FLRA.

Defendant also contends that Plaintiff is governed by the FLRA pursuant to the provision that states:

> If any agency or labor organization is **charged by any person** with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint.

5 U.S.C. § 7118(a)(1) (emphasis added).

Defendant argues that since Plaintiff is a **person**, this provision brings her within the scope of the FLRA. However, Defendant's argument ignores the fact that in order for this provision to apply, the Plaintiff must not only be a person, but she must also be a person charging an agency with having engaged in or engaging in an **unfair labor practice**. As discussed above, Plaintiff has not alleged an unfair labor practice in the instant suit because none of the unfair labor practice causes of action provide a remedy for a non-federal employee. Rather, she has alleged constitutional claims in her capacity as an individual who is not a federal employee. Therefore, the FLRA does not provide exclusive jurisdiction in this matter.

## **TEMPORARY RESTRAINING ORDER STANDARD**

The district court may grant a temporary restraining order if the moving party shows: "(1) substantial likelihood of prevailing on the merits; (2) irreparable injury if the injunction is denied; (3) greater injury to the movant absent the injunction than that which the opposing party will suffer under the injunction; and (4) lack of adverseness to the public interest." *Pacific Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1231 (10th Cir. 2005).

However, the Tenth Circuit recognizes a "modified-likelihood-of-success-on-the-merits" standard, which provides that "[w]hen the other three requirements for a [temporary restraining order] are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Otero Savings & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir.1981) (citations and quotations omitted).

There are, however, certain "disfavored" categories of injunctions for which the modified-likelihood-of-success-on-the-merits standard is not available. *Schrier v. University Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (internal quotations and citations omitted). A mandatory injunction is one of those types disfavored by the Tenth Circuit. *Id.* at 1258. An injunction is presumed to be mandatory if it "affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Id.* Once it is determined that an injunction is mandatory, the modified-likelihood-of-success-on-the-merits standard is not available and the relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1261.

In the present case, the relief sought by Plaintiff would require Defendant to do something, namely withdraw the ban and notify appropriate entities that the ban had been withdrawn. Therefore, Plaintiff seeks a mandatory injunction and the modified-likelihood-of-success standard does not apply.

## DISCUSSION

**I.     Likelihood of Success on the Merits.**

Plaintiff alleges, among other things, that Defendant violated her First Amendment rights by banning her from BIA and OST facilities, where she engaged in Union activities before the ban.

The First Amendment prohibits federal agencies from "abridging the freedom of speech." U.S. Const. amend. I. *See Tucker v. State of Texas*, 326 U.S. 517, 520 (1946) (recognizing that the First Amendment applies to federal agencies). However, the First Amendment does not require the government to "permit all forms of speech on property that it owns and controls." *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678 (1992). Rather, "[t]he extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content-neutral." *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999).

Therefore, when it has been alleged that a government agency has violated the First Amendment, the initial inquiry must be what is the nature of the forum at issue. "The Supreme Court has identified three distinct categories of government property: (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora." *Id.* at 1286.

The attributes of "traditional public forums [are] that time out of mind, [they] have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (quotations omitted). Such traditional public fora include streets, sidewalks, and parks. *See id.*; *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

On the other hand, designated public fora are those that the government creates "by

-10-

intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). Such designation may not occur by inaction, rather the government entity must have "by policy or by practice opened [its] facilities for indiscriminate use by the general public, or by some segment of the public . . . ." *Hazelwood*, 484 U.S. at 267. "Examples of designated public fora include: state university meeting facilities expressly made available for use by students, school board meetings open to the public by state statute, advertising space in state-owned subway and commuter rail stations, a city owned and operated senior center sponsoring lectures, and public libraries. " *Hawkins*, 170 F.3d at 1287 (citations omitted). Even where private facilities are designated open to the public, the government, through its level of control over that forum, may prevent it from transforming from a non-public forum into a public forum. *Fleming v. Jefferson County Sch. Dist. R-1,* 298 F.3d 918, 929 (10th Cir. 2002).

When the government acts to restrict speech in a either a tradition or designated public forum, the applicable standard "depends upon whether the speech restriction is content-based or content-neutral." *Hawkins*, 170 F.3d at 1286. A content based restriction must be "necessary to serve a compelling state interest and [be] narrowly drawn to achieve that end." *Id*. (quotations omitted). In contrast, a content-neutral restriction must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* (quotations omitted).

An altogether different standard applies if government facilities are deemed to be nonpublic fora. The category of nonpublic fora is essentially a catchall, encompassing those facilities that are neither traditional nor designated public fora. *Id*. at 1287. Within the category of nonpublic fora, there exists a sub-category referred to as limited public fora, which are created "[w]hen the

government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum . . . ." *Summum v. Callaghan*, 130 F.3d 906, 916 (10th Cir. 1997).

Nonpublic fora and its subcategory of limited public fora are both analyzed under the same deferential reasonableness standard. *See id.* The Tenth Circuit, however, has cautioned that this deferential standard "does not mean the government has unbridled control over speech, however, for it is axiomatic that 'the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.'" *Id.* (quoting *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993)). In fact, the Supreme Court has deemed that it is a "blatant" violation of the First Amendment, when a speech restriction "targets not subject matter, but particular views taken by speakers on a subject . . . ." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). To summarize, "[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806. Moreover, with respect to limited public fora, once the government "has opened a limited forum, [it] must respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829.

Turning the above analysis to the case at hand, the BIA and OST facilities at issue qualify as "limited public" fora. This conclusion is reached by first determining that the BIA and OST facilities do not qualify as public fora, either through tradition or by designation, because the facilities have not been opened "for indiscriminate use by the general public." *See Hazelwood*, 484 U.S. at 267. Since the facilities are not public fora, they are, by default, nonpublic fora. *Hawkins*, 170 F.3d at 1286. More precisely, the BIA and OST facilities qualify as limited public fora, which is the subcategory

-12-

of nonpublic fora. This categorization is made because the BIA and OST have only "allow[ed] selective access to some speakers or some types of speech." *See Summum*, 130 F.3d at 916. Specifically, the BIA and OST have selected the IEF to be the exclusive representative of their employees. As the exclusive representative of BIA and OST employees, IEF representatives have access to their facilities to engage in speech related to Union issues. This access, at least to some degree, is formally recognized in the Labor Management Contract Between the Department of the Interior Office of the Special Trustee for American Indians and the Indian Educators Federation, Local 4524, American Federation of Teachers AFL-CIO ("OST/IEF Contract") (attached as Exhibit 5A to Complaint) and the Contract between the Department of the Interior Bureau of Indian Affairs and the Indian Educators Federation American Federation of Teachers Local 4524 AFL-CIO ("BIA/IEF Contract") (attached as Exhibit 5B to Complaint). For instance, the IEF is provided with office space within BIA and OST facilities. *See* OST/IEF Contract, Article 9, Section 1 and BIA/IEF Contract Article 7, Section 5. The IEF is entitled to be present at grievance proceedings and other meetings addressing working conditions. *See* OST/IEF Contract, Article 12, Section 3; BIA/IEF Contract, Article 3, Section 6 and Article 24, Section 5. Union representatives may be present when an issue of employee discipline is being discussed. *See* BIA/IEF Contract, Article 22, Section 2. The Union, on request, may conduct membership drives at the facilities. *See* BIA/IEF Contract, Article 3, Section 9.

The court also notes that in addition to the access granted by policy under the contracts, BIA and OST have also granted access to Union representatives through past practice. For instance, Plaintiff provided an email from Defendant, dated November 22, 2006, in which he explicitly stated that employers have a duty to "approve time for employees to meet with representatives as work load

permits. This occurs at the work site." Email from Michael Billings (Nov. 27, 2006) (attached as Exhibit 13 to Complaint). In addition, in Plaintiff's Second Affidavit, she averred that before the ban she spent 80% of her work related time in the field at BIA and OST worksites. Plaintiff also alleges that while she was onsite at the BIA and OST facilities she engaged in a variety of activities including: conducting meetings to recruit new members and address employee concerns, working with employees facing disciplinary actions, attending dispute resolution meetings between employees and their employers, providing training to Union stewards, and attending management briefings about new management initiatives. *See* Plaintiff's Second Affidavit.

Under these circumstances, the BIA and OST have created limited public fora that allows IEF representatives access to BIA and OST facilities in order to engage in speech related to Union issues.

Having determined that the facilities are limited public fora, the issue becomes, whether the ban of Plaintiff from all BIA and OST facilities is "reasonable in light of the purpose served by the forum," is "viewpoint neutral," and respects the boundaries of the limited public forum. *Cornelius*, 473 U.S. at 806; *Rosenberger,* 515 U.S. at 829.

Plaintiff, as a union representative of the IEF, is among the class of individuals that the BIA and OST allow to access their facilities. Moreover, the Defendant has not argued that Plaintiff, when engaging in the activities that gave rise to her ban, was engaged in speech that was unrelated to Union issues. In fact, Defendant stated that the reason for the ban was because "her conduct was opprobrious and therefore not protected under the [FLRA]. She crossed the line of acceptable behavior for a union representative and her misconduct was not protected under the law." *See* Letter

-14-

from Michael Billings to Patrick Carr (June 30, 2006) (attached as Exhibit 1 to Complaint).[5] In other words, Defendant did not complain that the subject matter of Plaintiff's speech went beyond the scope of the limited public forum, instead his complaint focused on how she expressed her viewpoints on the permitted subject matter.

The Supreme Court has recognized that "[s]peech is often provocative and challenging. . . . [N]evertheless [it is] protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949). Moreover, speech may be particularly provocative in the context of union and employer relationships, which courts have recognized are adversarial by nature. *See, e.g.*, *Kunz v. United Food & Commercial Workers, Local 876*, 5 F.3d 1006, 1010 (6th Cir. 1993); *H.B. Zachry Co. v. N.L.R.B.*, 886 F.2d 70, 74 (4th Cir. 1989); *Robinson v. State of N.J.*, 806 F.2d 442, 450 (3rd Cir. 1986); *International Bhd. of Elec. Workers, AFL-CIO v. N. L. R. B.*, 487 F.2d 1113, 1141 (D.C. Cir. 1972). Although employers may not enjoy it when a union representative engages in provocative speech, they generally may not restrict it when such speech is "within the forum's limitations" unless such speech "produce[s] a clear and present danger of a serious and substantive evil." *Terminiello*, 337 U.S. at 4.

---

[5] Apparently, Defendant's use of the word "opprobrious" stems from decisions by the FLRA that suggest that an employee who is engaged in concerted activity can, by "opprobrious" conduct, lose the protection of the FLRA. *See, e.g.*, *Department of Defense, Defense Mapping Agency Aerospace Center*, 17 F.L.R.A. 71 (1985). However, the opprobrious standard is inapposite in this case since Plaintiff is not seeking protections under the FLRA; rather, she is seeking protection under the First Amendment of the Constitution. Such constitutional issues are appropriately analyzed under the standard set forth in this opinion and not an "opprobrious" conduct standard.

There is no evidence that the speech that Plaintiff engaged in was likely to produce a clear and present danger. While the parties dispute the exact conduct that led Defendant to ban Plaintiff, a review of Defendant's correspondence shows that the most egregious conduct he alleges consisted primarily of her showing up uninvited to a meeting and insisting on tape recording said meeting and showing up to see a management official without an appointment and then refusing to leave his office. Of course, Defendant goes into greater detail about those incidents and gives his opinion about such incidents. However, nothing before this Court indicates that Plaintiff's conduct went beyond provocative, inconvenient, or even annoying, and rose to the level of "likely to produce a serious and substantive evil." *Terminiello*, 337 U.S. at 4. Therefore, a restriction of her speech on the basis of the conduct complained of by Defendant would be unconstitutional in this context and Plaintiff is likely to succeed on the merits of her claim that Defendant violated her First Amendment rights.[6] Therefore, Plaintiff satisfies the first requirement that must be met in order for this Court to grant a temporary restraining order.[7]

## II. Irreparable Harm

"Irreparable harm" means that "the injury must be both certain and great, and that it must not be merely serious or substantial." *Prairie Band of Potawatomi Indians*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quotations and citations omitted). It "is often suffered when the injury cannot be

---

[6]The Court, at this time, does not specifically analyze the ban from the facility sidewalks and parking lots, but it does find that Plaintiff is equally likely to prevail on her claim regarding these areas under either the deferential reasonableness standard analyzed above or the more stringent standard applicable to public fora.

[7]Plaintiff also alleges violations of other constitutional rights. However, the Court will refrain from addressing those issues at this juncture since Plaintiff has already met the likelihood of success requirement under her First Amendment argument.

adequately atoned for in money, or when the district court cannot remedy the injury following a final determination on the merits." *Id*. (quotations and citations omitted). However, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Plaintiff alleges that Defendant violated her First Amendment rights by banning Plaintiff from BIA and OST facilities, where she engaged in Union activities before the ban. As the claims herein allege loss of First Amendment freedoms, Plaintiff need not make any further showing of irreparable harm.

### III.    Balance of Harms

The BIA and OST continue to allow IEF representatives access to their facilities. Allowing Plaintiff to rejoin those representatives who are allowed into the facility will pose no significant burden on Defendant. While the Court recognizes that Defendant is concerned that Plaintiff will cause disruption if she is allowed to return, there is no evidence, as previously discussed, that Plaintiff has ever engaged in disruption that rose to the level of justifying Defendant's ban. By contrast, in addition to the harm to Plaintiff's constitutional rights, she also faces a real harm of losing her job if she is not allowed access to BIA and OST facilities. Specifically, at an IEF Council meeting, held January 29, 2007, a recommendation was made that Plaintiff leave her position. *See* Appendix/Supplement to Plaintiff's Supplemental Brief. The Court thus finds that, if a temporary restraining order is granted, the benefit to Plaintiff will outweigh any potential harm to Defendant.

### IV.     Public Interest

"Vindicating First Amendment freedoms is clearly in the public interest." *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005). Accordingly, the Court finds that a temporary restraining order would not be adverse to the public interest in this case.

## CONCLUSION

This Court has jurisdiction over this case as the FLRA does not provide an exclusive remedy and the government has waived sovereign immunity in these circumstances. Plaintiff contends that Defendant violated her First Amendment rights by banning Plaintiff from BIA and OST facilities, where she engaged in Union activities before the ban. Plaintiff has shown a substantial likelihood of prevailing on the merits of her claim, evidence of irreparable harm in the absence of the temporary restraining order, proof that the threatened harm outweighs any damage the temporary restraining order may cause to the party opposing it, and that the temporary restraining order, if issued, will not be adverse to the public interest. Accordingly, this Court may grant the request for a temporary restraining order.

Moreover, this Court finds that there is good cause to waive the security requirement of Fed. R. Civ. P. 65(c) because of the lack of harm to the Defendant from the temporary restraining order and the substantial likelihood by the Plaintiff of success on the merits.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Temporary Restraining **[Doc. No. 7]** is **GRANTED.**

**IT IS THEREFORE FURTHER ORDERED** that Defendant shall:

A. Immediately withdraw the ban of Plaintiff from BIA and OST facilities, parking lots and sidewalks;

B. Immediately allow Plaintiff access to BIA and OST facilities consistent with access provided to other IEF representatives and within the boundaries of the limited forum created by the BIA and OST;

C. Immediately notify all individuals and entities to whom the ban was communicated, including, but not limited to, security personnel and law enforcement authorities, that said ban is no longer in effect.

**IT IS THEREFORE FURTHER ORDERED** that the security requirement of Fed. R. Civ. P. 65(c) is waived.

**IT IS THEREFORE FURTHER ORDERED** that a hearing on the Motion for Preliminary Injunction **[Doc. No. 7]** is set for February 20, 2007, at 9:00 a.m.

**DATED** this 14th day of February, 2007.

MARTHA VÁZQUEZ  
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Margaret Ludewig
Stephanie Landry

Attorneys for Defendant:
John Zavitz (AUSA)
Jan Mitchell (AUSA)